# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RONDELL MUHAMMAD, | ) |
| Plaintiff, | ) )  |
| v. | ) No. 13-cv-01915 ) |
| AURORA LOAN SERVICES, LLC, et al., | ) Judge Andrea R. Wood ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rondell Muhammad's complaint alleges numerous improprieties by his mortgage lender, its successors, and their agents in connection with the closing, servicing, and foreclosure of his mortgage loan, as well as the reporting of his mortgage debt. Muhammad seeks damages for these improprieties under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and Illinois statutory and common law of fraud, deceptive trade practices, unjust enrichment, intentional infliction of emotional distress, and conspiracy. Defendants, the entities that allegedly committed the improprieties, collectively seek dismissal of Muhammad's complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. Nos. 34, 36.) Also before the Court is Dutton & Dutton P.C.'s separate motion to dismiss Muhammad's claims under the Fair Debt Collection Practices Act and Illinois common law of civil conspiracy. (Dkt. No. 45.) For the reasons stated below, the motion to dismiss joined by all Defendants is granted in part and denied in part. Dutton & Dutton's separate motion to dismiss is denied as moot.

**BACKGROUND**

Muhammad has filed a 54-page, 447-paragraph Second Amended Complaint. The pertinent allegations from that complaint and its attached exhibits are summarized below and accepted as true for the purposes of the motion to dismiss. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Muhammad closed a mortgage loan on his residence in June 2007. Defendant Aurora Bank FSB ("Aurora Bank") (then known as Lehman Brothers Bank FSB) was the lender and Defendant Mortgage Electronic Registration Services, Inc. ("MERS") was given the right to exercise the lender's security interests, including the right to foreclose upon the property securing the loan. The loan documents included an adjustable rate note that obligated Muhammad to repay his unpaid loan balance plus interest in monthly installments. In addition, the mortgage agreement provided that the loan servicer—*i.e.*, the entity that collected loan payments—could change with or without the sale of the note, and that Muhammad would receive notice of any such change along with any other information required by RESPA**.** The agreement also provided that the note, or a partial interest in the note, could be sold one or more times without notice to Muhammad.

Aurora Bank transferred the servicing rights for Muhammad's loan to Defendant Aurora Loan Services ("Aurora Loan") in July 2007 and transferred his note to a trust at approximately the same time. In September 2008, Aurora Loan filed a complaint in the Circuit Court of Cook County to foreclose on Muhammad's property. Aurora Loan was awarded summary judgment in that foreclosure action in October 2010.

Muhammad applied to Aurora Loan for a loan modification under the Home Affordable Modification Program ("HAMP") in January 2011. Aurora's March 16, 2011 response stated:

"Unfortunately, we are unable to offer you a HAMP Modification for the following reasons: Owner/investor declined short sale transaction due to parties involved." Muhammad wrote back to Aurora Loan on April 4, 2011, advising that he was seeking a modification, not a short sale. His letter also stated that he understood Aurora Loan to be the owner and servicer of his loan, even though its denial of his modification application suggested otherwise. He asked that Aurora Loan send his loan owner's name, address, and telephone number, and also requested urgent attention to the matter so that he would be able to modify his loan before the scheduled May 10, 2011 sale date for his property. Muhammad's letter was conspicuously labeled: "This is a 'Qualified Written Request.'"

Muhammad filed a bankruptcy petition on June 13, 2011 and received a discharge of his debts on November 22, 2011. In December 2011, he ordered his credit history reports from three credit reporting agencies and received the reports shortly thereafter. He wrote to the agencies in January 2012 stating that he disputed the accuracy of certain items furnished by Aurora Bank and Aurora Loan. When the agencies responded that the reported debts had been verified, Muhammad sent correspondence to Aurora Loan requesting investigation and verification of his alleged debt.

In the present lawsuit, Muhammad claims that at the closing of his loan, he did not receive the required number of copies of the disclosure statement mandated by TILA, 15 U.S.C. § 1641. He further asserts that the disclosure he did receive was inaccurate and that Aurora Bank and Aurora Loan required him to pay substantially greater finance charges than the amounts disclosed at closing. He also alleges that Aurora Loan and Aurora Bank violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), by failing to investigate the validity of their reports of his indebtedness after they were advised of the inaccuracy of those reports. Muhammad further

3

contends that Aurora Loan violated RESPA, 12 U.S.C. § 2605, by failing to inform him of transfers of his note and by failing to provide an appropriate response to his written requests for identification of the owner of the note.

In addition, Muhammad claims that Aurora Loan, two law firms that represented Aurora Loan, Aurora Bank, and MERS committed multiple unlawful acts in connection with the foreclosure case: filing false documents, fraudulently claiming the right to payment, concealing the true ownership and chain of title of Muhammad's note, misstating the extent to which he was in default, and attempting to collect on claimed debts that had already been satisfied. He contends that these acts violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, and that they are also actionable under Illinois common law of fraud, unjust enrichment, intentional infliction of emotional distress, and civil conspiracy.

Muhammad's Fair Debt Collection Practices Act claim (Count I) is asserted against Aurora Loan, Aurora Bank, and the two law firms that participated in the foreclosure action, Dutton & Dutton, P.C. and McGinnis Wutscher Beiramee LLP. His claims under the Fair Credit Reporting Act (Count II) and TILA (Count IV), as well as his claims for common law of fraud, unjust enrichment, and intentional infliction of emotional distress (Counts VIII and IX), are brought against Aurora Loan and Aurora Bank. An additional common law fraud claim (Count VII) names Aurora Loan, Aurora Bank, and MERS. Muhammad's claims under RESPA (Count III), the Illinois Consumer Fraud Act and the Illinois Deceptive Business Practices Act (Count V), and the Illinois Uniform Deceptive Trade Practices Act (Count VI) name only Aurora Loan as the culpable party. All Defendants are named in Muhammad's civil conspiracy claim (Count

4

X), including Lehman Brothers Holdings, Inc. and Structured Asset Securities Corporation, entities which are alleged to have been involved in transfers of the note.

## DISCUSSION

Before the Court is a motion by Defendants Aurora Loan, Aurora Bank, MERS, Structured Asset Securities Corporation, and McGinnis Wutscher Beiramee LLP to dismiss Muhammad's complaint in its entirety for failure to state a claim for relief. (Dkt. No. 34.) Defendant Dutton & Dutton, P.C. has also joined this motion. (Dkt. No. 36.) Also before the Court is Dutton & Dutton's separate motion to dismiss for failure to state a claim under the Fair Debt Collection Practices Act or the common law of civil conspiracy. (Dkt. No. 45.) In considering these motions, the Court presumes all of the well-pleaded facts and allegations in the complaint to be true and views them in the light most favorable to the nonmoving party. Fed. R. Civ. P. 12(b)(6); *Wilson v. Price,* 624 F.3d 389, 391 (7th Cir. 2010).

### I.     Pre-Bankruptcy Claims

Defendants first contend that Muhammad's claims are barred by the doctrine of judicial estoppel. They note that in his Chapter 7 bankruptcy proceeding Muhammad was asked to identify assets including "contingent and unliquidated claims of every nature" and that he represented that he had no such assets. (Ex. C to Mem. in Supp. of Def.'s Mot. to Dismiss, Dkt. No. 35-3.)[1] "[A] debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends." *Cannon-Stokes v. Potter,* 453 F.3d 446, 448 (7th Cir. 2006). Judicial estoppel bars a plaintiff's attempts to recover such claims. *Id.* at 448-49. Defendants argue that the doctrine is fatal to Muhammad's claims here.

---

[1] This Court may take notice of public filings in the Bankruptcy Court record without converting Defendants' Rule 12(b)(6) motions into motions for summary judgment. *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994).

But the Seventh Circuit has cautioned that additional analysis must be conducted before applying the judicial estoppel doctrine to bar claims that a plaintiff failed to disclose in bankruptcy. "[T]he threshold issue is not whether to apply an estoppel but whether [plaintiff] is the real party in interest." *Biesek v. Soo Line R. Co.,* 440 F.3d 410, 413 (7th Cir. 2006). A legal claim arising out of events occurring before a debtor's bankruptcy filing belongs to the debtor's estate. *In re Polis,* 217 F.3d 899, 901-02 (7th Cir. 2000). In Chapter 7 proceedings, only the trustee has standing to bring such claims. *Cable v. Ivy Tech State Coll.,* 200 F.3d 467, 472 (1999). It is thus appropriate to examine whether a plaintiff has standing to bring his claims before determining the merits of those claims. *Brucker v. Quirk, Inc.,* No. 13 C 5903, 2014 WL 960800, at *2 (N.D. Ill. Mar. 12, 2014). Analysis of the plaintiff's standing to bring an action is properly conducted on the Court's own motion even where, as here, the issue has not been raised by the parties. *G & S Holdings LLC v. Cont'l Cas. Co.,* 697 F.3d 534, 540 (7th Cir. 2012); RK Co. v. See, 622 F.3d 846, 851 (7th Cir. 2010).

The majority of the claims raised by Muhammad in the present case involve conduct or transactions occurring prior to the June 13, 2011 filing of his bankruptcy petition. His TILA allegations, for example, relate to the documents he received at his loan closing in 2007. Similarly, his Fair Debt Collection Practices Act claim, state statutory and common law fraud claims, and intentional infliction of emotional distress and conspiracy claims are all based upon Defendants' alleged conduct in closing his loan, transferring interests in the loan before the filing of the foreclosure action, litigating that action, and denying his modification application. These acts all occurred before Muhammad's bankruptcy filing and therefore claims based on them became property of the estate regardless of when Muhammad learned about them. *Brucker,* 2014 WL 960800, at *2.

Moreover, those claims remained the property of the estate after the closing of Muhammad's bankruptcy case. The Bankruptcy Code provides that unless the court orders otherwise, property identified in the debtor's schedules that is not otherwise administered is abandoned to the debtor. 11 U.S.C. § 554(c). The limitation of this abandonment provision to scheduled property plainly raises the inference that property not scheduled is not abandoned. This inference is reinforced by the Code's next subsection, which provides that property not abandoned in accordance with the terms of § 554 remains property of the estate. 11 U.S.C. § 554(d).

The utility of the estate's retention of unscheduled and otherwise unrevealed assets is readily apparent. A bankruptcy case that has been closed may be reopened to administer assets. 11 U.S.C. § 350(b). Federal courts have accordingly observed that a bankruptcy trustee "cannot abandon unscheduled assets." *In re Green,* 42 Fed. Appx. 815, 820 (7th Cir. 2002); *see also Jeffrey v. Desmond,* 70 F.3d 183, 186 (1st Cir. 1995). This principle applies even after the bankruptcy case closes. *Tyler v. DH Capital Mgmt., Inc.,* 736 F.3d 455 (6th Cir. 2013). "[I]f a legal claim is not scheduled or otherwise administered by the time the bankruptcy is closed, it forever remains property of the estate, and the trustee remains the real party in interest." *Matthews v. Potter*, 316 Fed. Appx. 518, 521 (7th Cir. 2009).

The Courts of Appeals have found that unscheduled assets may be considered abandoned by the estate where the record demonstrates that the trustee knew of their existence and elected not to pursue their recovery. *See, e.g.*, *Spaine v. Cmty. Contacts, Inc.,* 756 F.3d 542, 546-47 (7th Cir. 2014); *In re Kane,* 628 F.3d 631, 643 (3d Cir. 2010); *Morlan v. Universal Guar. Life Ins. Co.,* 298 F.3d 609, 620-21 (7th Cir. 2002). But nothing in the record of this case indicates that Muhammad's bankruptcy estate trustee knew about the pre-bankruptcy claims that Muhammad

7

seeks to assert here. The trustee thus retains the exclusive right to assert Muhammad's claims for conduct occurring prior to his June 13, 2011 bankruptcy filing and Muhammad lacks standing to bring those claims.

This finding does not dictate dismissal of the pre-bankruptcy claims, however. Muhammad's lack of standing raises issues regarding his own status as the real party in interest under Federal Rule of Civil Procedure 17, not the Court's power to adjudicate the action. *Hernandez v. Forest Pres. Dist. of Cook Cnty.,* No. 08 C 5731, 2010 WL 1292499, at *2-3 n.4 (N.D. Ill. Mar. 29, 2010). Rule 17(a)(3) provides that an action shall not be dismissed for failure to prosecute in the name of the real party in interest until that party has been given a reasonable time to ratify, join, or be substituted into the action. Fed. R. Civ. P. 17(a)(3). The trustee may be substituted as the proper plaintiff in place of a debtor who lacks standing to pursue claims belonging to the bankruptcy estate. *Kleven v. Walgreen Co.,* 373 Fed. Appx. 608, 610-11 (7th Cir. 2010). Consistent with Rule 17(a)(3), the Court will allow a reasonable time for the trustee to ratify, join, or be substituted as a party. If the trustee declines to take any action with respect to the subject claims, the claims will be dismissed with prejudice.

**II.     Post-Bankruptcy Claims**

Muhammad's complaint also raises claims based upon occurrences after his bankruptcy filing. Such claims are not the property of Muhammad's bankruptcy estate and he was not required to disclose them in his asset schedules. *In re Willett,* 544 F.3d 787, 791 n.3 (7th Cir. 2008); *In re Adair,* 253 B.R. 85, 90-91 (9th Cir. BAP 2000). These claims are therefore his to pursue and are not barred by judicial estoppel. It is therefore appropriate to proceed to analyze the merits of the claims and Defendants' arguments regarding their sufficiency.

The complaint alleges that Aurora Loan violated RESPA by failing to notify him "that its contract had terminated for servicing the loan." (Second Am. Comp. ¶ 314, Dkt. No. 33.) This assertion follows an allegation that Aurora Loan was only entitled to service the loan as agent for a trust that Muhammad claims ceased to exist in March 2008. (*Id.* ¶ 313.) That aspect of his RESPA claim thus remains property of the bankruptcy estate.

But a second aspect of Muhammad's RESPA claim relates to a later time period. He alleges that on April 4, 2011 he sent Aurora Loan an inquiry categorized by RESPA as a "qualified written request." (*Id.* ¶ 316.) RESPA obligates the recipient of a qualified written request to respond in writing. *See* 12 U.S.C. § 2605(e)(2). Aurora Loan argues that this aspect of Muhammad's complaint is insufficient because it alleges a failure to respond "appropriately" without specifying the unlawful shortcoming. In fact, the complaint alleges that Aurora failed to respond at all. (Second Am. Comp. ¶ 164, Dkt. No. 33.) This sufficiently alleges a RESPA violation. Since the alleged failure to respond violated the statute only after 60 days had passed from the request (exclusive of Saturdays, Sundays, and holidays), and since the earliest date that Aurora Loan could have been construed to be in violation of the statute was beyond Muhammad's June 13, 2011 bankruptcy filing date, this claim is neither property of the bankruptcy estate nor barred by judicial estoppel.

Muhammad also alleges that Aurora Loan and Aurora Bank violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), by failing to investigate his claims that they gave credit bureaus inaccurate information regarding the status of his accounts. In response, Aurora Loan and Aurora Bank contend that their obligation to investigate under the statute arose only upon their receipt of notice of a dispute from the credit bureaus. They further assert that Muhammad's complaint, although alleging that they received notice from the credit bureaus, is contradicted by

the exhibit attached to the complaint and cited as support for the allegation: Exhibit CC to the complaint shows that the credit bureaus' notice of a dispute was sent only to Muhammad, not to them. (Ex. CC to Second Am. Compl., Dkt. No. 33-2.)

The exhibit in question is a credit bureau investigation report addressed only to Muhammad. Aurora Loan and Aurora Bank are correct in their contention that it does not conclusively establish that they received notice of the dispute from the bureaus. But the report, while failing to establish Muhammad's claims, does not contradict them. At worst, it is silent as to whether the bureau notified Aurora Loan and Aurora Bank of the claimed inaccuracy. Since factual inferences must be drawn in favor of the nonmovant in the context of a Rule 12(b)(6) motion, this silence cannot be construed as dispositive of Muhammad's allegations that Aurora Loan and Aurora Bank received notice of his disputes from the credit bureaus.

Finally, Defendants contend that this action should be dismissed or stayed pursuant to the *Colorado River* abstention doctrine due to ongoing litigation of the state court foreclosure action against Muhammad. The *Colorado River* doctrine permits a federal court to abstain from exercising its jurisdiction when such action would promote wise judicial administration. *Colorado River Water Conservation Dist. v. U.S.,* 424 U.S. 800, 818 (1976). Such abstention may be considered only if the proceedings are parallel—meaning that substantially the same parties are litigating substantially the same issues in the other forum. *AXA Corporate Solutions v. Underwriters Reinsurance Corp.,* 347 F.3d 272, 278 (7th Cir. 2003). The critical question is whether there is a substantial likelihood that the state litigation will dispose of all the claims presented in the federal case. *Huon v. Johnson & Bell, Ltd.,* 657 F.3d 641, 646 (7th Cir. 2011). This proceeding is not a parallel action to the state foreclosure case for the purposes of the *Colorado River* doctrine. Although some of Muhammad's claims would presumably be

addressed by the outcome of the foreclosure action, the record does not suggest any likelihood that his RESPA and Fair Credit Reporting Act claims would be resolved there.

## CONCLUSION

For the reasons explained above, Defendants' motion to dismiss is granted in part and denied in part. The motion is denied with respect to Muhammad's RESPA claim based on the failure by Aurora Loan to respond to his April 2011 inquiry and his Fair Credit Reporting Act claim. Under Federal Rule of Civil Procedure 17(a), Muhammad is not the real party in interest with respect to his remaining claims. The real party in interest is Muhammad's bankruptcy estate and only the bankruptcy trustee may bring those claims. Pursuant to Rule 17(a)(3), the Court will allow a reasonable time for the trustee to ratify, join, or be substituted as a party. If the trustee declines to take any action with respect to the subject claims within 60 days of this Memorandum Opinion and Order, the claims will be dismissed with prejudice. In light of this ruling, Defendant Dutton & Dutton P.C.'s motion to dismiss is denied as moot.

ENTERED:

Dated: March 31, 2015

Andrea R. Wood
United States District Judge